**Paul J. HEIN, Plaintiff–Appellant,**

v.

**CUPRUM, S.A., DE C.V. and Heching-
er Company Defendant–Appellees.**

Docket No. 02–7241.

United States Court of Appeals,
Second Circuit.

Dec. 5, 2002.

Joseph Hein, Law Office of Joseph Hein, Altamont, NY, for Appellant.

Richard M. Gershon, Thorn Gershon Tymann and Bonanni, LLP, Albany, NY, for Appellees.

Present: WINTER CABRANES Circuit Judges and JONES,\* District Judge.

**SUMMARY ORDER**

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and hereby is **AF-FIRMED.**

---

On July 21, 1999, plaintiff Paul Hein was cleaning the gutters outside his home when the six-foot ladder on which he was standing tipped over. Hein suffered serious head injuries as a result of the accident. Hein filed a diversity action in the Untied States District Court for the Northern District of New York on August 27, 1999, asserting strict products liability and breach of warranty claims against defendants Cuprum, S.A. de C.V. and the Hechinger Company, the manufacturers of the ladder. After a jury trial in February 2002, the jury reached a verdict for defendants. On appeal, plaintiff seeks a new trial based on the District Court's purportedly erroneous admission of certain undisclosed expert testimony. We find no error and affirm the judgment of the District Court.

## I. The District Court Proceedings

At trial, Hein presented the expert testimony of Dr. John S. Morse, an engineer, who stated that Hein's ladder had tipped because of a phenomenon called "racking," in which the rear two legs of a ladder twist and move horizontally while in use, causing one leg of the ladder to lift off the ground. Morse stated in his pre-trial expert report and testified at trial that a "bow" (or bend) in the left "spreader bar" on the damaged ladder was caused by the compressive forces that occur during racking. Dr. Morse also indicated that damage to the rails at the bottom of the ladder was caused by Hein's falling onto the side of the ladder, after it had racked and fallen to the ground.

Defendants solicited the expert testimony of Dr. Erick H. Knox. Although he was a defense witness, Knox was called by plaintiff to testify as an adverse witness. Knox stated in his pre-trial report that "on the left [spreader bar] there is a very slight outward bowing of the rear piece, as well as an outward bowing or twisting of the rear rail at the spreader connection," but that the deformity "appear[ed] to be unrelated to the subject incident." On direct examination, Knox reiterated the statements in his report. However, on cross-examination, when defense counsel asked Knox why he believed that the deformation of the spreader was not due to compressive forces or racking, Knox discussed the significance of damage to the spreader bar being near, but not at, its connection to the ladder's rails; the fact that the shorter piece of the spreader bar was damaged but the longer piece was not; and the scratches on one of the rails slightly above the spreader bar. Knox also stated that the damage he had observed on the bottom of the ladder was caused by Hein's landing on the ladder in the air, before the ladder even hit the ground, and he described an experiment done in his physics lab in which a person in a climbing harness was placed on a ladder, and the ladder was tipped, to examine how the body moves. The substance of this additional testimony was not contained anywhere in his expert report.

Plaintiff's counsel objected at least three separate times to the introduction of this testimony because it was not disclosed in Knox's expert report, as required by Fed. R.Civ.P. 26(a)(2)(B). Judge Kahn overruled the objections without explanation; however, he did allow plaintiff to examine Dr. Knox on re-direct examination the next day, and to recall Dr. Morse to the stand to rebut Dr. Knox's testimony.

## II. Discussion

Plaintiff asks that we set aside the jury's verdict and remand for a new trial based

on the District Court's failure to exclude Dr. Knox's undisclosed expert testimony. We review the District Court's evidentiary rulings, and its decisions whether to impose discovery sanctions for the nondisclosure of evidence, for abuse of discretion. *United States v. Abel,* 469 U.S. 45, 54–55, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (evidentiary rulings); *Healey v. Chelsea Resources, Ltd.,* 947 F.2d 611, 619–20 (2d Cir.1991) (same); *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1365 (2d Cir.1991) (discovery sanctions).

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires that expert testimony be accompanied by a written report which shall contain, among other things, "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions." Fed.R.Civ.P. 26(a)(2)(B). Rule 37(c)(1) states that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed.R.Civ.P. 37(c)(1).

Although the language of Fed.R.Civ.P. 37(c)(1) "is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material," *Newman v. GHS Osteopathic. Inc.,* 60 F.3d 153, 156 (3d Cir.1995) (internal quotation marks and citations omitted), the Rule makes exceptions for nondisclosures that are "substantial[ly] justifi[ed]" or "harmless," *Lohnes v. Level 3 Communications, Inc.,* 272 F.3d 49, 60 (1st Cir.2001), *Newman,* 60 F.3d at 156; *Hinton v. Patnaude,* 162 F.R.D. 435, 439 (N.D.N.Y.1995). Ac-

cordingly, "[t]he imposition of sanctions for abuse of discovery under Fed.R.Civ.P. 37 is a matter within the discretion of the trial court." *Newman,* 60 F.3d at 156 (internal quotation marks and citations omitted), *cited in Johnson Elec. N. Am., Inc. v. Mabuchi Motor Am. Corp.,* 77 F.Supp.2d 446, 458 (S.D.N.Y.1999); *see also Rambus, Inc. v. Infineon Techs. AG,* 145 F.Supp.2d 721, 724–27 (E.D.Va.2001) (adopting a five-part discretionary approach to rule 37(c)(1) sanctions). Assuming that Dr. Knox did violate Rule 26(a)(2)(B) by failing to disclose certain of his testimony in an expert report, *see Salgado by Salgado v. General Motors Corp.,* 150 F.3d 735, 742 n. 6 (7th Cir.1998) ("Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions.") (citing *Reed v. Binder,* 165 F.R.D. 424, 429 (D.N.J.1996)), we hold that it was not an abuse of discretion for the trial judge to have allowed the challenged testimony where he took appropriate steps to ensure that plaintiff would not be harmed by the defendants' nondisclosure.

By allowing plaintiff to examine Dr. Knox on re-direct examination, and by allowing plaintiff to recall his expert, Dr. Morse, Judge Kahn was able to cure whatever prejudice may have been created by defendants' nondisclosure. It is not clear what additional facts plaintiff could have brought to light had Dr. Knox's testimony been disclosed prior to trial. After Knox testified, plaintiff's attorney had a night to prepare before re-examining the witness; the next morning, plaintiff's counsel rigorously questioned Dr. Knox regarding the challenged testimony. Plaintiff's counsel then re-called his own expert, Dr. Morse, back to the stand and specifically asked him, "[D]oes their theory hold water?" Dr. Morse responded "no," and then ex-

plained at length why he did not agree with Dr. Knox's technical testimony offered on cross-examination the previous day. Tr. at 382–95. Plaintiff does not point to any specific facts that may have escaped the jury's attention as a result of defendants' nondisclosure. In the circumstances, there was no abuse of discretion. The trial judge appropriately used his discretion to steer a middle course between the extreme remedy of exclusion and the possibility of unfair prejudice to the plaintiff.[1]

We have reviewed all of the appellant's arguments. For the reasons set forth above, the judgment of the District Court is hereby **AFFIRMED.**

---

1. Some trial courts in this Circuit have read a bad-faith requirement into Rule 37(c)(1), stating that the "drastic remedy" of excluding expert testimony is not appropriate unless "the party's conduct represents flagrant bad faith and callous disregard of the federal rules." *McNerney v. Archer Daniels Midland Co.,* 164 F.R.D. 584, 587 (W.D.N.Y.1995); *see Ward v. Nat. Geographic Soc'y,* No. 99 Civ. 12385, 2002 WL 27777, at *2 (S.D.N.Y. Jan. 11, 2002); *Grdinich v. Bradlees,* 187 F.R.D. 77, 80 (S.D.N.Y.1999); *Johnson Elec.,* 77 F.Supp.2d at 458; *DiPirro v. United States,* 43 F.Supp.2d 327, 340 (W.D.N.Y.1999); *Hinton,* 162 F.R.D. at 439–40; *Sterling v. Interlake Indus. Inc.,* 154 F.R.D. 579, 587 (E.D.N.Y. 1994). We express no opinion as to whether a showing of bad faith is required before evidence may be excluded under Rule 37(c)(1). We hold only that, in this case, the trial court acted within the bounds of its discretion in admitting certain undisclosed testimony, where the Court was able to take steps to erase whatever prejudice may have been created by the nondisclosure. *Cf. Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 108–09, 113 (2d Cir.2002) (holding in the context of Rule 37(b)(2)–which provides for sanctions against a party that fails to comply with a discovery order–that sanctions may be imposed not only for actions taken in bad faith or involving gross negligence, but also for actions resulting from ordinary negligence.)