**Michelle GUALTIERI and Ralph Gualtieri, Plaintiffs,**

v.

**Vassiliki Portari FARINA and Lawrence M. Farina, Jr., Defendants.**

**No. 02 CIV. 0992(WCC).**

United States District Court, S.D. New York.

Sept. 16, 2003.

---

Costello & Folcheti, LLP, Carmel, NY (Gregory L. Folcheti, of Counsel), for plaintiffs.

Boeggeman, George, Hodges & Corde, P.C., White Plains, NY (Paul A. Hurley, of Counsel), for defendants.

*OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs Michelle Gualtieri ("M. Gualtieri" or "plaintiff") and her husband Ralph Gualtieri bring this action against Vassilki Portari Farina and Lawrence M. Farina, Jr. for personal injuries arising out of a motor vehicle accident that occurred on August 29, 2000.[1] Defendants bring the

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

instant motion for summary judgment on the basis that M. Gualtieri has not sustained a "serious injury" pursuant to New York State Insurance Law Article 51.[2] For the reasons stated below, the defendants' motion for summary judgment is granted.

## BACKGROUND

On August 29, 2000, R. Gualtieri, the driver of a 1986 Ford Bronco II, and M. Gualtieri, a passenger, were stopped at a red light. (Defs. Rule 56.1 Stmt. at 2; Folchetti Aff. ¶ 4.) A vehicle driven by V. Farina with the permission of the vehicle's owner L. Farina, struck the rear of plaintiffs' vehicle. (Defs. Rule 56.1 Stmt. at 2; Folchetti Aff. ¶ 4; Pls. Mem. Opp. Summ. J. at 1.) Neither party called the police nor an ambulance to the accident scene and no one went to an emergency room. (Defs. Rule 56.1 Stmt. at 2.)

After the accident, M. Gualtieri sought treatment from numerous doctors and claims that the following injuries were caused by the accident:

1) Cervical and lumbar sprain/strain with resultant constant pain in lower back and neck.

2) Straightening of the cervical curvature.

3) Bulging of disks C3 through C5–6.

4) Posterior disc herniation of C6–7 increasing right paracentrally.

Plaintiff claims these injuries cause constant pain, have limited her motion functions and prevented her from performing all of her household duties, responsibilities and activities for a period of ten months after the accident. (Pls. Mem. Opp. Summ. J. at 15.)

## DISCUSSION

### I. *Summary Judgment Standard*

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in her favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### II. *New York's No–Fault Law*

■ New York's No–Fault law is intended to "weed out frivolous claims and limit recovery to significant injuries." *Bewry v. Colonial Freight Sys.*, No. 01 Civ. 5634, 2002 WL 31834434, at *2

---

**2.** Plaintiffs cross moved for partial summary judgment on the issue of liability, but defendants conceded liability in their reply papers leaving only the issue of whether plaintiff's injuries fall within the category of "serious injury." (Defs. Reply Mem. ¶ 3.)

(S.D.N.Y. Dec.17, 2002) (quoting *Dufel v. Green,* 84 N.Y.2d 795, 798, 622 N.Y.S.2d 900, 647 N.E.2d 105 (1995)). In fact, the No–Fault law states that there shall be no right of recovery for non-economic losses arising out of negligence in the use or operation of an automobile except in the case of a "serious injury." *Id.; Barth v. Harris,* No. 00 Civ. 1658, 2001 WL 736802, at *1 (S.D.N.Y. June 25, 2001). A serious injury is defined as:

> Personal injury which results in death; dismemberment; a fracture; loss of a fetus; permanent loss of use of a body organ, member function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from pursuing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred and eighty days immediately following the occurrence or injury or impairment.

New York State Insurance Law § 5102.

M. Gualtieri contends that her injuries are serious in that they fall under the latter three categories: permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or injury or impairment of a non-permanent nature that satisfies the 90/180–day requirement. (Pls. Mem. Opp. Summ. J. at 10.)

■ The New York Court of Appeals has instructed that courts should first determine whether the plaintiff has established a prima facie case for serious injury. *Licari v. Elliott,* 57 N.Y.2d 230, 236, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982). Further, the Court of Appeals provided a guideline for determining whether an injury is serious, specifying that subjective complaints alone are not sufficient for a finding of serious injury, and that objective evidence is needed. *Toure v. Avis Rent A Car Sys., Inc.,* 98 N.Y.2d 345, 350, 746 N.Y.S.2d 865, 774 N.E.2d 1197 (2002). An expert's conclusion based on an MRI is considered objective evidence. *Id.* at 358, 746 N.Y.S.2d 865, 774 N.E.2d 1197. The *Toure* court went on to hold that "an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury," however "an expert's *qualitative* assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system." *Id.*

■ On summary judgment, the burden is on the defendants to establish a prima facie case that plaintiff did not sustain a serious injury as defined by § 5102. *Barth,* 2001 WL 736802, at *2. To sustain their burden, defendants may rely on unsworn reports from plaintiff's treating physicians but any reports from defendants' own physicians must be in admissible form, *i.e.,* affidavits or affirmations. *Id.; Pagano v. Kingsbury,* 182 A.D.2d 268, 270, 587 N.Y.S.2d 692 (N.Y.App.Div.1992); *McGovern v. Walls,* 201 A.D.2d 628, 628, 607 N.Y.S.2d 964 (N.Y.App.Div.1994). If defendants meet their burden, the plaintiff must then set forth a prima facie case that she sustained a serious injury by submitting admissible evidence in the form of affidavits or affirmations. *Barth,* 2001 WL 736802, at *2; *Pagano,* 182 A.D.2d at 270, 587 N.Y.S.2d 692 ("Plaintiff's opposition, to the extent that it relies solely on the findings of the plaintiff's own medical witnesses, must be in the form of affidavits or affirmations, unless an acceptable excuse for failure to comply with this requirement

is furnished."). However, New York State courts have consistently held that a plaintiff, when opposing summary judgment, may use the unsworn reports that defendants relied on. *Pietrocola v. Battibulli,* 238 A.D.2d 864, 866 n. 1, 656 N.Y.S.2d 559 (N.Y.App.Div.1997) (allowing plaintiff's doctor to rely on an unsworn MRI in his affidavit because it was the defendant who included the report in the materials offered in support of his motion for summary judgment and "cannot now be heard to complain"); *Pech v. Yael Taxi Corp.,* 303 A.D.2d 733, 758 N.Y.S.2d 110, 111 (N.Y.App.Div.2003) (holding that it was proper for the plaintiff to use an unsworn physician's report and MRI to raise a triable issue of fact when they were initially relied on by the defendants, and therefore properly before the court); see also *Perry v. Pagano,* 267 A.D.2d 290, 290, 699 N.Y.S.2d 882 (N.Y.App.Div.1999); *Pagels v. P.V.S. Chem., Inc.,* 266 A.D.2d 819, 820, 698 N.Y.S.2d 368 (N.Y.App.Div.1999); *Raso v. Statewide Auto Auction Inc.,* 262 A.D.2d 387, 388, 691 N.Y.S.2d 158 (N.Y.App.Div.1999); *Vignola v. Varrichio,* 243 A.D.2d 464, 467, 662 N.Y.S.2d 831 (N.Y.App.Div.1997) (Goldstein, J., dissenting).

### A. *Defendants' Evidence*

Defendants set forth unsworn evidence from three of plaintiff's physicians and an affirmation from their own physician.

The day after the accident, plaintiff saw a chiropractor, Dr. Grina. M. Gualtieri complained of acute lower neck pain and right-side lower back pain that began immediately after the accident and continued to worsen. (Defs.Mem.Supp.Summ. J., Ex. E.) Dr. Grina noted bilateral tenderness of the lower cervical and upper thoracic paraspinal muscles and in the lumbar region. (*Id.*) Dr. Grina noted joint motion restriction through all the lower cervical segments with all planes of motion stating: "Cervical ROM was restricted, flexion 40 degrees, extension 10 degrees, left and right lateral bending 15 degrees, left and rotation 50 degrees with pain. Thoracolumbar ROM was restricted with flexion at 40 degrees, extension 0 degrees, left and right lateral bending 15 degrees." (*Id.*) Also, a straight leg raise test on either side showed increased lower back related symptoms at 65 degrees. (*Id.*) However, Dr. Grina found that M. Gualtieri's neurological status was stable, her muscle strength was graded 5/5 and her sensory reactions to pin prick, light touch and vibration were intact. (*Id.*) Dr. Grina's impression was acute cervical sprain/strain injury and acute lumbar sprain/strain injury. (*Id.*) Dr. Grina provided massage therapy and advised plaintiff to modify her activities to tolerance. (*Id.*) M. Gualtieri saw Dr. Grina thirteen times and at each visit Dr. Grina noted that her physical findings remained essentially the same. (*Id.*)

Plaintiff saw Dr. Benjamin on September 20, 2000 for a neurological consultation. (Defs. Rule 56.1 Stmt. at 3.) Dr. Benjamin noted that the patient had a history of multiple sclerosis ("MS"), which was diagnosed in June 1997. (Defs.Mem.Supp.Summ. J., Ex. F.) The physical examination revealed tenderness in the right cervical paraspinal musculature, right trapezius, right scalene complex and right deltoid region. (*Id.*) The neurological examination revealed mostly normal functioning except decreased pin prick sensations in the left lower extremity and right ulnar distribution. (*Id.*) Dr. Benjamin's impression was cervical strain and right T6 radicular symptomatology, which was causally related to the motor vehicle accident with defendants. (*Id.*) He recommended continued chiropractic treatment, prescribed Relafen and a soft cervical collar and requested that plaintiff undergo a

cervical MRI. (*Id.*) The cervical MRI, performed on September 25, 2000, revealed "Straightening of the cervical curvature compatible with reflux muscle spasm. C3 through C5–6 posterior subligamentous disc bulges. C6–7 posterior disc herniation increasing right paracentrally." (*Id.*) An MRI of the lumbar spine performed on July 11, 2001 was normal and plaintiff reported that her lower back pain improved but that she still had consistent neck pain. (*Id.*) Three visits in 2001 indicated that her neck was supple. (*Id.*) Her visits to Dr. Benjamin continued through April of 2002 with the consistent diagnosis of chronic cervical and lumbar strain. (*Id.*) Dr. Benjamin's examination notes do not indicate whether plaintiff sustained any limitation in her range of motion.

Plaintiff also sought treatment with Dr. Duncan of the Mt. Kisco Medical Group in October of 2001, though apparently she went for treatment of her MS, not for treatment of her back.[3] (Defs.Mem.Supp.Summ. J., Ex. I.) Dr. Duncan found that the plaintiff's back was without tenderness and there was no evidence of pain on percussion of the cervical, thoracic or lumbosacral spine. (*Id.*) Dr. Duncan also noted plaintiff's history of MS and left sided optic neuritis but found that she was clinically stable with no new complaints. (*Id.*) A somatic evoked potential study of the bilateral lower extremities ordered by Dr. Duncan produced normal results. (*Id.*, Ex. J.)

Dr. Pracella conducted an independent chiropractic examination of plaintiff on September 28, 2001. (Defs.Mem.Supp.Summ. J., Ex. K.) Dr. Pracella found that plaintiff's range of motion was within normal limits, however plaintiff reported increased lower back pain with extension and lateral bending. (*Id.*) Dr. Pracella diagnosed plaintiff with cervical and lumbar sprain with a good prognosis. (*Id.*)

Defendants' doctor, Dr. Weintraub, examined plaintiff on January 10, 2003. (*Id.*, Ex. L.) He concluded, after examination of plaintiff and review of the above doctors' findings, that the accident caused a cervical and lumbar strain but plaintiff did not appear to be disabled from a neurological perspective. (*Id.*) Nothing in Dr. Weintraub's affirmation indicates that he performed any specific range of motion tests, nor did he indicate any conclusions as to plaintiff's range of motion based on the tests he did perform. However, he found her neck to be supple, her straight leg examination to be negative, equal strength in all four extremities and normal muscle tone. (*Id.*) He questioned why plaintiff never mentioned any back or neck pain to Dr. Duncan and could not evaluate the significance of the herniated disk in the neck because "this can be seen in up to 40% of individuals in the population on an asymptomatic basis." (*Id.*)

### B. *Defendants' Prima Facie Case*

■ Based on the above evidence, we find that the defendants have satisfied their burden of making a prima facie case that plaintiff did not sustain a serious injury within the meaning of New York Insurance Law § 5102 based on plaintiff's own treating physician's notes that her neck was supple in 2001, Dr. Weintraub's affirmation that plaintiff's neck was supple in the most recent of all the physical examinations, January of 2003, and Dr. Pracella's examination in 2001 which indicated a range of motion within normal limits.

---

**3.** Defendants' doctor, Dr. Weintraub, notes that plaintiff visited Dr. Duncan for treatment of her MS. (Defs.Mem.Supp.Summ. J., Ex. L.)

*McCarthy v. Perault,* 277 A.D.2d 664, 665, 716 N.Y.S.2d 463 (N.Y.App.Div.2000) (granting defendant summary judgment in part on physician's conclusion that neck was supple); see also *Mejia v. Leisure Time Tours,* No. 01 Civ. 263, 2002 WL 1732887, at *3 (E.D.N.Y. July 24, 2002). Further, Dr. Weintraub found plaintiff's straight leg examination to be negative and she had equal strength in all four extremities. Both Dr. Benjamin and Dr. Weintraub found normal muscle tone and normal gait. The only neurological problems found were decreased pin prick sensations in the left lower extremity and ulnar distribution, which Dr. Duncan attributes to plaintiff's previously diagnosed MS, but which Dr. Benjamin attributes to the car accident. (Defs.Mem.Supp.Summ. J., Ex. I.) Moreover, Dr. Benjamin never noted any range of motion restrictions in his examination reports and never advised plaintiff to limit her normal daily activities. In fact, plaintiff testified that she started work as a postal carrier the day after the accident and remained an employee for a year and a half, missed only ten days of work due to the pain of her injuries and quit her job only as a result of her pregnancy. (*Id.,* Ex. C.) *Letellier v. Walker,* 222 A.D.2d 658, 659, 635 N.Y.S.2d 682 (N.Y.App.Div.1995) (holding that plaintiff failed to raise a triable issue of fact as to whether her injuries prevented her from performing "substantially all" of her daily activities when she missed less than three weeks of work).

## C. *Plaintiff's Prima Facie Case*

The burden now shifts to plaintiff to set forth sufficient evidence to make out a prima facie case that she sustained a serious injury. In support of her claim that she suffers permanent consequential limitation of use of a body organ or member, significant limitation of use of a body function or system, or injury or impairment of a non-permanent nature which falls into the 90/180–day category, she offers an affidavit from her treating physician, Dr. Benjamin.

■ Plaintiff has failed to set forth sufficient evidence of a permanent limitation or an injury that satisfies the 90/180–day requirement. The only indication that plaintiff's injuries are permanent is Dr. Benjamin's affidavit, which states that as a result of the motor vehicle accident, the plaintiff sustained significant injury to her cervical spine, which is permanent and limits the function and use of her cervical spine. However, "if plaintiff is alleging that her injury has resulted in permanent damage, she is under an obligation to provide competent evidence documenting how and to what extent her injury is permanent. Mere conclusory statements by her physician are not sufficient to raise a triable issue of fact." *Carter v. Geldis,* 2000 WL 1159904, at *6 (E.D.N.Y. April 23, 2002); *Lopez v. Senatore,* 65 N.Y.2d 1017, 494 N.Y.S.2d 101, 102, 484 N.E.2d 130 (1985) ("... the mere repetition of the word 'permanent' in the affidavit of a treating physician is insufficient to establish 'serious injury.' ").

■ Also, based on Dr. Benjamin's affidavit, his examination notes and plaintiff's testimony, plaintiff has failed to set forth sufficient evidence of an injury or impairment of a non-permanent nature which prevented her from pursuing substantially all of the material acts which constitute her usual and customary daily activities for not less than ninety days during the one hundred and eighty days immediately following the occurrence or injury or impairment. In order to sustain a claim in the 90/180–day category, plaintiff must prove that she was "curtailed from performing [her] usual activities to a great extent rather than some slight curtailment." *Li-*

*cari,* 57 N.Y.2d at 236, 455 N.Y.S.2d 570, 441 N.E.2d 1088.

■ Plaintiff testified that she started work as a postal carrier the day after the accident and remained an employee for a year and a half, only missing ten days of work due to the pain of her injuries and quitting her job only because of her pregnancy. While returning to work does not necessarily preclude plaintiff from establishing a prima facie case in this category, her self-serving testimony that she can no longer clean her house or hold her baby for long periods of time, is unsubstantiated. *Sands v. Stark,* 299 A.D.2d 642, 644, 749 N.Y.S.2d 334 (N.Y.App.Div.2002) ("The fact that plaintiff returned to work within a few months of the accident is not dispositive."); *Arrowood v. Lowinger,* 294 A.D.2d 315, 742 N.Y.S.2d 294, 295 (N.Y.App.Div. 2002) (plaintiff's unsubstantiated claim that he was unable to do household chores is insufficient to show serious injury in the 90/180–day category); *Gaddy v. Eyler,* 79 N.Y.2d 955, 958, 582 N.Y.S.2d 990, 591 N.E.2d 1176 (1992) (plaintiff failed to establish serious injury in 90/180–day category where she submitted no evidence to support her contention that her household and recreational activities were curtailed). Dr. Benjamin's affidavit states that "complete elimination of physical activity was necessary in the period subsequent to the accident in order to prevent relapse, regression and/or exacerbation." (Pls. Mem. Opp. Summ. J., Ex. B ¶ 14.) However, this statement in no way indicates that he instructed plaintiff to limit her activities and his notes likewise reflect no such instruction. Accordingly, plaintiff has failed to set forth a prima facie case of serious injury in the 90/180–day category, leaving only the category of significant limitation of use of a body function or system.

■ In order to make out a prima facie case for a significant limitation, plaintiff must show a significant limitation in both degree and duration. *Khouzam v. Zalesky,* No. 93 Civ. 6360, 1996 WL 79882, at *7 (S.D.N.Y. Feb.26, 1996) (citing *Petrone v. Thornton,* 166 A.D.2d 513, 561 N.Y.S.2d 49, 50 (N.Y.App.Div.1990)). The plaintiff has shown medical evidence of a quantifiable limitation in her range of motion in September of 2000. In his affidavit, Dr. Benjamin reiterates that the cervical MRI showed bulging discs, straightening of the cervical curvature and a disc herniation. We note that "herniated or bulging discs do not per se meet the statutory threshold of serious physical injury," without "objective evidence of the extent or degree of the alleged physical limitations resulting from the injuries and their duration." *Rose v. Furgerson,* 281 A.D.2d 857, 859, 721 N.Y.S.2d 873 (N.Y.App.Div.2001); *Noble v. Ackerman,* 252 A.D.2d 392, 394, 675 N.Y.S.2d 86 (N.Y.App.Div.1998). Defendants state in their moving papers that Dr. Grina did not "set forth a designation of a numeric percentage of plaintiff's loss of motion of either her cervical or lumbar spines." (Defs. Mem. Supp. Summ. J. at 3.) However, Dr. Grina did quantify plaintiff's limited range of motion in terms of degrees which Dr. Benjamin converted to percentages. (Defs. Mem. Supp. Summ. J., Ex. E; Pls. Mem. Opp. Summ. J., Ex. B.)[4] In his affidavit, Dr. Benjamin interprets Dr. Grina's impressions of plaintiff's limited range of motion as the following: "Cervical flexion was limited to 40 out of 60 degrees (33% loss of motion); extension 10 out of 30 degrees (67% loss of motion);

---

**4.** Defendants argue that Dr. Benjamin may not interpret Dr. Grina's unsworn report, but we find that because defendants relied on it, it is properly before the Court. *See* discussion *supra* Part II.

right and left lateral bending both 15 out of 30 degrees (50% loss of motion) and left and right rotation 50 out of 60 degrees (16% loss of motion)." (Pls. Mem. Opp. Summ. J., Ex. B ¶ 4.) Dr. Benjamin goes on to state that these limitations were evident during his examination of the plaintiff as well, though there is no indication of this in his examination notes. (*Id.*)

 However, as noted above, plaintiff must also prove the duration of the significant limitation. *Shao v. Paszynsky*, No. 97 Civ. 3815, 2000 WL 307372, at *6 (E.D.N.Y. Jan.31, 2000) (quoting *Troutovski v. Sitnir*, 180 Misc.2d 124, 687 N.Y.S.2d 534, 535 (N.Y.Civ.Ct.1999)) ("[T]he absence of proof of a recent medical examination leaves an important evidentiary vacuum in a plaintiff's opposition to a motion for summary judgment, where the plaintiff is claiming some form of permanent or significant injury."). Dr. Benjamin's affidavit attesting to the degree of limitation was made almost three years after Dr. Grina's original examination showed a limited range of motion and almost three years after the cervical MRI. Further, Dr. Benjamin did not indicate that his opinion was based upon any recent medical examination and apparently the plaintiff's last visit to Dr. Benjamin was April 29, 2002, over a year before his affidavit. *Covington v. Cinnirella*, 146 A.D.2d 565, 566, 536 N.Y.S.2d 514 (N.Y.App.Div.1989) (medical affidavit submitted on behalf of plaintiff in which physician expressly bases his opinion on an examination of his records without indicating that he has recently examined the plaintiff is insufficient to withstand summary judgment). The lack of any evidence that this limitation continued, beyond her subjective complaints of pain, in conjunction with evidence that her range of motion was within normal limits by Sep-

tember of 2001 and that her neck was supple around that same time, necessitates the finding that plaintiff failed to meet the definition of serious injury with respect to the durational requirement. *Beckett v. Conte*, 176 A.D.2d 774, 575 N.Y.S.2d 102, 103 (N.Y.App.Div.1991) (holding that affidavit prepared three years after medical examination from which opinion is based is insufficient to prove duration of the alleged impairment); see also *Khouzam*, 1996 WL 79882, at *6.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is granted.

SO ORDERED.