Michael EBEWO, Plaintiff,

v.

Jesus MARTINEZ, Defendant.

No. 02 Civ. 3902(JGK).

United States District Court,
S.D. New York.

March 22, 2004.

Vincent I. Eke–Nweke, P.C., Brooklyn, NY, for plaintiff.

Steven Martin, Leahey & Johnson, P.C., New York City, for Defendant.

## OPINION and ORDER

KOELTL, District Judge.

This diversity action arises out of an alleged accident in which a car owned and operated by the defendant, Jesus Martinez, struck the plaintiff, Michael Ebewo, as he was crossing the street in the Bronx, New York. The plaintiff filed this suit against the defendant alleging state law claims based on negligence.

The defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that the plaintiff's claims are barred by statute because he has not suffered a "serious injury" as defined by New York's no-fault automobile insurance law. *See* N.Y. Ins. L. §§ 5104(a) and 5102(d).

### I

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993); *see also Scotto v. Almenas*, 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases).

## II

The following facts are undisputed except where otherwise noted. The alleged accident occurred on November 23, 1999 at the intersection of University Avenue and Tremont Avenue in the Bronx, New York, at about 12:30 p.m. (Def.'s Rule 56.1 St. ¶ 1; Pl.'s Resp. Rule 56.1 St. ¶ 1.) Each party has a different view of the circumstances of the alleged accident.

The defendant claims that he was stopped at a red light, and that when the light turned green, he remained stationary to allow pedestrians to cross in front of him before he made a left turn. (Def.'s Rule 56.1 St. ¶ 3.) The defendant claims that he was then hit from the rear by a Ford pick-up truck and that the impact

caused his car to move forward about one foot. (*Id.* ¶¶ 3–4.) The defendant claims that he then exited his car to inspect for damage, and that upon returning from the rear of the car he encountered the plaintiff, who was then standing and writing on a piece of paper. (*Id.* ¶¶ 5–6.) The defendant claims that a crowd formed and threatened him, which caused him to leave. (*Id.* ¶ 6.) The defendant maintains that his car did not hit the plaintiff or any other pedestrian. (*Id.* ¶ 7.)

The plaintiff claims that as he was crossing the street in front of the defendant's car, the defendant ran a red light, knocked the plaintiff to the ground, and dragged the plaintiff a few feet. (Pl.'s Resp. Rule 56.1 St. ¶ 1.) The plaintiff disputes the defendant's claim that a Ford pick-up truck was involved in the accident. The plaintiff claims that after he was hit, the defendant got out of his car momentarily but then returned and drove off. (*Id.* ¶ 3.) The plaintiff concedes that a crowd had formed and threatened to attack the defendant. (*Id.* ¶ 6.)

The plaintiff was given an MRI examination on December 9, 1999, and that examination revealed evidence of disc herniation in the plaintiff's spine. (Affidavit of Steven Brownstein, M.D. dated July 2, 2003, attached as Ex. 6 to Affidavit of Vincent I. Eke–Nweke dated July 7, 2003 ("Eke–Nweke Aff.").)

One of the plaintiff's treating physicians, Dr. Enrique Hernandez, concluded in December 2000 that the plaintiff was experiencing thirty-degree decreased range of motion of the cervical and lumbar spine, and that the plaintiff had suffered injuries that included a closed head injury with post-traumatic headaches, a contusion sprain to the cervical and lumbar spine regions, and a contusion injury to the left knee. (Report of E. Hernandez, M.D., dated Dec. 20, 2000 attached as Ex. L to

Affidavit of Joel Scott Ray dated June 18, 2003 ("Ray Aff."), at 1–2.)

As a result of the injuries he allegedly sustained on November 23, 1999, the plaintiff missed approximately one month of work as a teacher. (*See* Transcript of Deposition of Michael Ebewo dated Oct. 11, 2002 ("Ebewo Dep.") attached as Ex. F to Ray Aff., at 10, 82.) The plaintiff claims that he continues to experience pain and stiffness in his neck and back as well as various physical limitations that prevent him from engaging in certain everyday tasks and activities. (Affidavit of Michael Ebewo dated July 2, 2003 ("Ebewo Aff.") attached as Ex. 9 to Eke–Nweke Aff., at ¶¶ 7–8.) In addition to these injuries, the plaintiff alleges that he has also suffered from irritability and a decreased sexual drive. (Ebewo Dep. at 92–94.)

On April 21, 2003, the plaintiff was examined by two experts retained by the defendant. Dr. Robert Israel conducted an orthopedic examination, and he concluded that the plaintiff had made a complete recovery from any injuries he might have sustained as a result of the alleged accident, and that the plaintiff had not sustained a permanent injury that would require further testing, treatment, or therapy. (Affidavit of Dr. Robert Israel, M.D., dated June 17, 2003 attached as Ex. I to Ray Aff., ¶ 6.) Dr. Andrew Ivanson conducted a neurological examination, and he concluded that the plaintiff had recovered from any injuries he might have sustained in the alleged accident and that there were no objective neurological findings to substantiate the plaintiff's subjective complaints. (Affidavit of Dr. Andrew Ivanson dated June 14, 2003 attached Ex. J to Ray Aff., ¶ 2.) He further concluded that the plaintiff has no disability and does not require any neurological treatment, therapy, or testing. (*Id.* ¶ 7.)

The defendant filed this motion for summary judgment on June 19, 2003. In his papers in opposition to the motion, the plaintiff submitted the affidavit of Dr. Gonzalo C. Robles, Jr., who examined the plaintiff on July 2, 2003. (Affidavit of Gonzalo C. Robles, Jr., M.D., dated July 2, 2003 ("Robles Aff.") attached as Ex. 5 to Eke–Nweke Aff., ¶ 2.) Dr. Robles concluded that the plaintiff was still suffering from neck and back pain and a reduced range of motion as a result of the bulging and herniated discs disclosed on the plaintiff's MRI report, and that the plaintiff's condition is chronic, permanent and partially disabling in nature. (*Id.* ¶¶ 10–11.)

### III

■ The defendant moves for summary judgment on the ground that the plaintiff has not suffered a "serious injury" as required by New York's no-fault automobile insurance law.

New York's no-fault automobile insurance law provides that "in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss." N.Y. Ins. L. § 5104(a); *D'Avolio v. Dictaphone Corp.,* 822 F.2d 5, 6 (2d Cir.1987); *Rosas v. Hertz Corp.,* No. 96 Civ. 7165, 1997 WL 736723, at *2 (S.D.N.Y. Nov. 24, 1997) (citing *Licari v. Elliott,* 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982)). New York Insurance Law § 5102(d) defines a "serious injury" as follows:

"Serious injury" means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; sig-

nificant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment. N.Y. Ins. L. § 5102(d). Whether a plaintiff has sustained a serious injury, and thus has a cause of action within the meaning of the statute, is a threshold issue for the court to decide. *Licari*, 455 N.Y.S.2d 570, 441 N.E.2d at 1091.

■■■■ On summary judgment, once the defendant has established a prima facie case that the plaintiff has not suffered a "serious injury" as defined by § 5102(d), the burden then shifts to the plaintiff "to come forward with sufficient evidence to overcome defendant's motion by demonstrating that [he] sustained a serious injury within the meaning of the No–Fault Insurance Law." *Gaddy v. Eyler*, 79 N.Y.2d 955, 582 N.Y.S.2d 990, 591 N.E.2d 1176, 1177 (1992). To defeat a summary judgment motion, the plaintiff must present admissible evidence in the form of sworn affidavits by physicians. *See Morrone v. McJunkin*, No. 98 Civ. 2163, 1998 WL 872419, at *2 (S.D.N.Y. Dec. 15, 1998); *Grasso v. Angerami*, 79 N.Y.2d 813, 580 N.Y.S.2d 178, 588 N.E.2d 76, 77 (1991). To support his argument that the plaintiff did not suffer a serious injury within the meaning of the statute, the defendant may rely on unsworn reports by the plaintiff's physicians, but reports from physicians retained by the defendant must be in the form of sworn affidavits. *See Morrone*, 1998 WL 872419, at *2; *Marsh v. Wolfson*, 186 A.D.2d 115, 587 N.Y.S.2d 695, 696 (2d Dep't 1992).

The defendant has met his initial burden by making a prima facie showing that the plaintiff has not suffered a "serious injury." The defendant has submitted sworn reports from two physicians who concluded that the plaintiff has completely recovered from any injuries he might have sustained in the alleged accident, and that the plaintiff suffers from no permanent injuries. *See Shinn v. Catanzaro*, 1 A.D.3d 195, 767 N.Y.S.2d 88, 91 (1st Dep't 2003) (concluding that defendant met burden by submitting sworn affirmation of physician who examined plaintiffs and concluded plaintiffs were neither "seriously nor permanently injured"); *Grossman v. Wright*, 268 A.D.2d 79, 707 N.Y.S.2d 233, 236 (2d Dep't 2000) (per curiam) ("[A] defendant can establish that the plaintiff's injuries are not serious within the meaning of Insurance Law § 5102(d) by submitting the affidavits or affirmations of medical experts who examined the plaintiff and conclude that no objective medical findings support the plaintiff's claim.").

■■■ The determinative issue on this motion is whether the plaintiff has submitted sufficient evidence to raise a triable issue of fact as to whether he suffered a serious injury within the meaning of the statute. The plaintiff submitted a sworn affidavit from the physician who conducted an MRI exam of the plaintiff in December 1999, and who concluded that the plaintiff's MRI revealed evidence of disc herniation in the plaintiff's spine. That physician, however, did not purport to examine the plaintiff after December 1999, and did not opine on any continuing limitations as a result of the conditions evidenced in the MRI. Under New York law, "a bulging or herniated disc may constitute a serious injury within the meaning of § 5102(d)," but "a plaintiff must provide objective evidence of the extent or degree of the alleged physical limitations resulting from

the disc injury and its duration." *Elfiky v. Harris*, 301 A.D.2d 624, 754 N.Y.S.2d 59, 60 (2d Dep't 2003) (internal quotation marks omitted); *see also Gualtieri v. Farina*, 283 F.Supp.2d 917, 925 (S.D.N.Y. 2003); *Rose v. Furgerson*, 281 A.D.2d 857, 721 N.Y.S.2d 873, 876 (3d Dep't 2001); *Ceglian v. Chan*, 283 A.D.2d 536, 724 N.Y.S.2d 762 (2d Dep't 2001).

There is some evidence that the plaintiff suffered lingering physical limitations as a result of the herniated discs. Dr. Enrique Hernandez, one of the plaintiff's treating physicians, concluded in December 2000, in an unsworn report that is properly before the Court because it was submitted by the defendant, that the plaintiff was experiencing thirty-percent decreased range of motion of the cervical and lumbar spine. However, a physician's report based on examinations conducted more than three years ago is insufficient to raise a triable issue of fact as to whether the plaintiff suffered a serious or permanent injury. *See Thompkins v. Santos*, No. 98 Civ. 4634, 1999 WL 1043966, at *5 (S.D.N.Y. Nov. 16, 1999) ("The ... rationale for requiring a recent examination, although not explicitly set forth by the Appellate Division, is patently obvious.... [T]he absence of proof of a recent medical examination leaves an important evidentiary vacuum in a plaintiff's opposition to a motion for summary judgment, where the plaintiff is claiming some form of permanent or significant injury.") (quoting *Troutovski v. Sitnir*, 180 Misc.2d 124, 687 N.Y.S.2d 534, 535 (1999) (collecting cases)); *McKinney v. Lane*, 288 A.D.2d 274, 733 N.Y.S.2d 456, 457 (2d Dep't 2001) (noting that projections of permanent limitations based on examinations of plaintiff conducted three years before summary judgment motion "have no probative value in the absence of a recent examination"); *Ocasio v. Henry*, 276 A.D.2d 611, 714 N.Y.S.2d 139, 140 (2d Dep't 2000) (finding that plaintiff failed to raise triable issue of fact

by submitting chiropractor's report that was not based on recent examination and not based on objective medical findings); *Bidetto v. Williams*, 276 A.D.2d 516, 713 N.Y.S.2d 764, 765 (2d Dep't 2000) (finding treating physician's projections of plaintiff's permanent limitations insufficient as a matter of law where physician last saw plaintiff more than two years before trial); *Grossman*, 707 N.Y.S.2d at 236 (noting that to raise triable issue of fact plaintiff must submit objective evidence of injury and "these verified objective medical findings must be based on a recent examination of the plaintiff").

The plaintiff's claim of serious injury is further undermined by the fact that there is a significant gap in his medical treatment that he has not adequately explained. The plaintiff conceded at his deposition that he did not receive any medical treatment between June 2000 and May or June 2002 for the injuries he allegedly sustained in the accident. (Ebewo Dep. at 87.) May 2002 was coincidentally the month that the plaintiff filed this lawsuit claiming injuries. The plaintiff submits that he was using medication to assuage the pain and other symptoms of his injury. (Letter of Vincent I. Eke–Nweke to the Court dated July 16, 2003, at 2.) However, the Appellate Division routinely considers gaps in plaintiffs' visits to their doctors in concluding that plaintiffs have not raised triable issues of fact as to the existence of a serious injury and that summary judgment dismissing the complaint is warranted. *See Nixon v. Muntaz*, 1 A.D.3d 329, 766 N.Y.S.2d 593, 594 (2d Dep't 2003); *Rossi v. Dwyer*, 288 A.D.2d 457, 733 N.Y.S.2d 491, 492 (2d Dep't 2001); *Betheil–Spitz v. Linares*, 276 A.D.2d 732, 715 N.Y.S.2d 435, 436 (2d Dep't 2000); *Graves v. Liu*, 273 A.D.2d 440, 710 N.Y.S.2d 113, 114 (2d Dep't 2000); *Medina v. Zalmen Reis & Assocs., Inc.*, 239 A.D.2d 394, 658 N.Y.S.2d 36, 37 (2d Dep't 1997).

The plaintiff submitted the sworn report of Dr. Gonzolo C. Robles, Jr. Dr. Robles concluded that the plaintiff was still suffering from neck and back pain as a result of reduced range of motion and as a result of the herniated discs disclosed on the plaintiff's December 1999 MRI report. Dr. Robles concluded that the plaintiff's condition is chronic, permanent and partially disabling in nature. Such an affidavit, if admissible, would raise an issue of fact and preclude summary judgment. *See Rosario v. Universal Truck & Trailer Serv.,* 2 A.D.3d 362, 770 N.Y.S.2d 67, 69 (1st Dep't 2003); *Gonzalez v. Vasquez,* 301 A.D.2d 438, 754 N.Y.S.2d 7, 7–8 (1st Dep't 2003).

The defendant contends that Dr. Robles' affidavit is inadmissible because it is an affidavit from an expert witness who was not previously disclosed in accordance with Federal Rule of Civil Procedure 26(a)(2). *See* Fed.R.Civ.P. 37(c)(1). Rule 26(a)(2) requires parties to disclose the identities of expert witnesses "at the times and in the sequence directed by the court." Fed. R.Civ.P. 26(a)(2)(C). By an order dated May 16, 2003, Magistrate Judge Maas directed that all expert discovery be concluded by June 12, 2003. (Order dated May 16, 2003 attached as Ex. H to Ray Aff.) The defendant filed this motion for summary judgment on June 19, 2003. After the motion was filed, the plaintiff was examined by Dr. Robles on July 2, 2003.

The plaintiff contends that Dr. Robles' affidavit is admissible because Dr. Robles is one of his treating physicians and therefore did not have to be disclosed as an expert under Rule 26(a)(2). *See* Letter of Vincent I. Eke–Nweke to the Court dated July 16, 2003; *see also Thompkins,* 1999 WL 1043966, at *7 n. 5 ("[T]reating physicians have consistently been held not to be experts within the meaning of Fed. R.Civ.P. 26(a)(2).") (collecting cases). However, Dr. Robles' affidavit makes clear that he did not have an ongoing relationship with the plaintiff as a treating physician. Dr. Robles states in his affidavit that his findings are based on an examination of the plaintiff on July 2, 2003 and on the reports of other physicians who had previously examined the plaintiff. (Robles Aff. ¶¶ 2–3.) There is no indication that Dr. Robles had ever examined the plaintiff before, and Dr. Robles is not listed anywhere in the record before the Court as one of the plaintiff's treating physicians. Indeed, in response to an order by the Magistrate Judge, the plaintiff was required to answer an interrogatory that listed his treating physicians and he did not list Dr. Robles. (Pl. Resp. to Def. First Set of Interr. dated Apr. 9, 2003 attached in Ex. C to Ray Aff.) Therefore, Dr. Robles should have been disclosed as an expert witness if the plaintiff planned to use Dr. Robles' affidavit to support his opposition to the defendant's motion for summary judgment.[1]

Federal Rule of Civil Procedure 37(c)(1) provides in relevant part that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any

---

1. Equally unavailing is the plaintiff's effort to suggest that he made an adequate disclosure of the identity of Dr. Robles, who is affiliated with North Central Medical Rehabilitation, P.C. ("North Central"), when he made initial disclosure in September 2002 of witnesses with knowledge and included "Henry Citronenbaum, M.D., or a representative from North Central Medical Rehabilitation." (Ex.

D to Ray Aff.) A similar disclosure was made in the plaintiff's draft of the joint pre-trial order dated December 2002 (Ex. E. to Ray Aff.) Both references, at most, could refer to another treating physician at North Central, but not to an expert witness, and both disclosures were made before there is any evidence that Dr. Robles had even seen the plaintiff.

witness or information not so disclosed." Fed.R.Civ.P. 37(c)(1). The purpose of the rule is to prevent the practice of "sandbagging" an opposing party with new evidence. *Ventra v. United States*, 121 F.Supp.2d 326, 332 (S.D.N.Y.2000); *Johnson Elec. N. Am. v. Mabuchi Motor Am. Corp.*, 77 F.Supp.2d 446, 458 (S.D.N.Y. 1999). Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution.[2] *Ventra*, 121 F.Supp.2d at 332; *Johnson Elec.*, 77 F.Supp.2d at 458.

The plaintiff has provided no reasonable justification for his failure to disclose the testimony of Dr. Robles. As noted above, the plaintiff's claim that Dr. Robles is one of his treating physicians is not supported by Dr. Robles' own affidavit, by the plaintiff's prior representations, or by any evidence. The plaintiff had it within his power to collect all the evidence required to prevail on his claim before the close of discovery and before the defendant had filed his motion for summary judgment, but he did not do so. Instead, he submitted to an examination by Dr. Robles only after the motion for summary judgment had been filed, and Dr. Robles' affidavit was disclosed to the defendant only in the plaintiff's opposition papers on this motion. The plaintiff's delay in seeking an examination by Dr. Robles suggests that the examination came about as an effort to refute the defendant's prima facie showing that the plaintiff had not suffered a serious or permanent injury. That delay prejudiced the defendant, because the defendant made his motion based on what he believed was the strength of the plaintiff's case at the close of discovery. This is the type of "sandbagging" of adversaries that Rule 37(c)(1) was designed to prevent, and therefore Dr. Roble's affidavit will be excluded from consideration.[3] *See Ventra,*

2. Some courts in this Circuit have read a bad-faith requirement into Rule 37(c)(1), stating that preclusion of expert testimony is not appropriate unless "the party's conduct represents flagrant bad faith and callous disregard of the federal rules." *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 587 (W.D.N.Y.1995); *see Ward v. Nat'l Geographic Soc'y*, No. 99 Civ. 12385, 2002 WL 27777, at *2 (S.D.N.Y. Jan. 11, 2002); *Grdinich v. Bradlees*, 187 F.R.D. 77, 79 (S.D.N.Y.1999); *Johnson Elec.*, 77 F.Supp.2d at 458; *DiPirro v. United States*, 43 F.Supp.2d 327, 340 (W.D.N.Y.1999); *Hinton v. Patnaude*, 162 F.R.D. 435, 439–40 (N.D.N.Y.1995); *Sterling v. Interlake Indus. Inc.*, 154 F.R.D. 579, 587 (E.D.N.Y.1994). Nonetheless, it is an open question whether bad faith or willfulness is required before expert testimony is excluded under Rule 37(c)(1). *See Wantanabe Realty Corp. v. City of New York*, No. 01 Civ. 10137, 2004 WL 169751, at *2 n. 2 (S.D.N.Y. Jan. 28, 2004).

In this case, as explained below, there was no substantial justification for failing to obtain and disclose an expert prior to the close of expert discovery and the time for making dispositive motions. Waiting until after a motion for summary judgment was filed and then attempting to pass an expert off as a treating physician was in fact flagrant bad faith and a callous disregard for the rules.

3. At the argument of the motion on March 5, 2004, the plaintiff's counsel submitted to the Court the affidavit of Dr. Michael A. Corey, the plaintiff's chiropractor, dated July 11, 2003. In the affidavit, Dr. Corey states his conclusion that the plaintiff's injuries are "chronic, permanent and partially disabling in nature." At argument, the plaintiff's counsel explained that he had not originally submitted the affidavit in July 2003, when the motion was being briefed, because he received it after the defendant's reply papers had been filed, and he did not think that the Court would be inclined to accept such an untimely affidavit. The affidavit is no more timely now than it was eight months ago, and the Court will not consider it for purposes of this motion. In any event, the affidavit would not change the result, because the affidavit, while it purports to be based on an examination of the plaintiff on July 2, 2003, does not state the objective tests (or any tests, for that matter) that Dr. Corey performed in reaching his conclusion that the plaintiff's injuries are chronic and permanent. *See Grossman*, 707

121 F.Supp.2d at 331–32; *Fed. Deposit Ins. Corp. v. Wrapwell Corp.*, No. 93 Civ. 859, 2000 WL 1576889, at *2–3 (S.D.N.Y. Oct. 23, 2000); *R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, No. 93 Civ. 8571, 1996 WL 30457, at *1–2 (S.D.N.Y. Jan. 25 1996).

Preclusion of Dr. Robles' affidavit prevents the plaintiff from raising an issue of triable fact and will require that the action be dismissed. However, in this case that result is not unfair to the plaintiff. As Judge Martin concluded in *251 CPW Hous. Ltd. v. Paragon Cable Manhattan*, No. 93 Civ. 944, 1995 WL 70675 (S.D.N.Y. Feb. 21, 1995), in excluding the plaintiffs' expert testimony pursuant to 37(c)(1) despite the fact that it would require dismissal of the plaintiffs' complaint:

> This result is not unfair to plaintiffs. This is not a complex case with changing issues, or in which theories and litigation strategy must be allowed to develop as evidence is discovered and the case progresses toward trial. It is a simple negligence case. The issues are straightforward and the facts that plaintiffs must prove have been clear from the time that they filed their Amended Complaint. Plaintiffs have an obligation to gather the evidence necessary to prove their case, and upon defendant's proper discovery requests, to make that evidence available to defendant, on or before the close of discovery.... As the Supreme Court stated in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, ... "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To

that end, a party may compel the other party to disgorge whatever facts he has in his possession ... thus reducing the possibility of surprise." ... Plaintiffs' counsel apparently has not taken seriously in this case the obligations imposed by the Federal Rules and this Court.

*Id.* at *4–5. The same considerations apply in this case. The plaintiff knew the evidence he would require in order to prevail on his claim and in order to survive a motion for summary judgment. It was unfair to the defendant for the plaintiff to cobble together the evidence needed to oppose summary judgment only after the date specified by Magistrate Judge Maas for the close of expert discovery, and only after the defendant had submitted his motion for summary judgment.[4]

The plaintiff's assertions, both in his deposition testimony and in his affidavit submitted in connection with this motion, that he continues to suffer from back pain, various physical limitations, and decreased sexual activity with his wife are insufficient to raise a triable issue of fact, because they are unsubstantiated by objective medical evidence. *See Abrahamson v. Premier Car Rental of Smithtown*, 261 A.D.2d 562, 691 N.Y.S.2d 83, 84 (2d Dep't 1999) ("Although the plaintiff submitted his own affidavit and pretrial testimony indicating that he occasionally suffers from back pain and that he was unable to have sexual relations with his wife or to care for his children for three months after the accident, he failed to submit any credible medical or other

N.Y.S.2d at 238 (finding that no triable issue of fact was raised by chiropractor's affirmation where he "failed to set forth the objective tests, if any, he performed in arriving at his conclusions....").

4. New York courts have reached similar conclusions. *See, e.g., Cillo v. Schioppo*, 250

A.D.2d 416, 673 N.Y.S.2d 628, 629 (1st Dep't 1998) (affirming summary judgment for defendants and trial court's denial of plaintiff's application to present revised version of physician's affidavit that trial court had previously concluded was inadmissible).

evidence to support these subjective claims.").

There is also no evidence in the record that would permit a reasonable jury to conclude that, as a result of the alleged accident, the plaintiff was prevented from performing "substantially all of the material acts which constitute [his] usual and customary daily activities" for at least 90 of the 180 days following the alleged accident. N.Y. Ins. L. § 5102(d). Indeed, the plaintiff was able to return to work one month after the alleged accident occurred.

Because the plaintiff has failed to raise a triable issue of fact in opposition to the defendant's prima facie showing that the plaintiff has not suffered a "serious injury" within the meaning of § 5102(d), the defendant's motion for summary judgment must be granted.

## CONCLUSION

For the reasons explained above, the defendant's motion for summary judgment is granted. The Clerk is directed to enter Judgment dismissing the Complaint and closing this case.

**SO ORDERED.**